IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MAR-NIQUE SIMON,

    Petitioner,

v.

DOMINGO URIBE, Warden,

    Respondent.

    /

No. C 09-05859 WHA

**ORDER FINDING CAUSE AND PREJUDICE TO EXCUSE PROCEDURAL DEFAULT**

## INTRODUCTION

Petitioner is a state prisoner serving a twenty-year sentence pursuant to a plea deal. He pleaded *nolo contendere* to second-degree robbery and attempted murder with use of a deadly weapon and infliction of great bodily injury. He seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2254. This order finds the procedural default of petitioner's first two claims excused due to cause and prejudice on account of his mental condition.

## STATEMENT

**1. FACTUAL BACKGROUND.**

In November 2002, Ibis Brignardello and her husband, Luis Perez Gardella, approached a church in Berkeley and found that it was locked. Petitioner Mar-Nique Simon allegedly approached the couple with a gun and said something to them in English. Ibis and Luis did not understand, because they spoke only Spanish. Petitioner tried to grab Ibis, but Luis stood between them. Petitioner held the gun toward Luis as the couple tried to get back to their car.

Ibis attempted to get into the car, but petitioner prevented her from doing so. He demanded money from them. Luis handed the little money he had in his pocket over to petitioner. Ibis managed to get inside the car and call the police using the cell phone that was inside (Dkt. No. 110-1, Exh. 20 at 9–10, 12–15, 18–20, 30–38).

When Ibis was inside the car with the door closed, petitioner followed Luis around with a gun pointed at Luis's midsection. Luis heard the gun click, then kicked the gun out of petitioner's hand. The clip fell to one side and the gun to the other. Luis grabbed the clip. After a few minutes, Luis kicked petitioner in the stomach. Petitioner began hitting Luis's head with the gun. Luis fell to the ground and, each time he tried to get up, petitioner hit him back down. On the ground, Luis tried to protect himself by holding his arms above his head, but petitioner kept hitting Luis with his gun. Even as Luis stopped moving on the ground and police sirens went by, petitioner continued beating Luis. When the police arrived and petitioner fled, Luis handed the police the clip from petitioner's gun. Luis went to the hospital by ambulance. The cuts on his head and face required sixty-five staples and twenty-three stitches. He also received stitches on his right arm. Ibis identified petitioner as Luis's assailant (*id.* at 21–23, 25–26, 38–47, 49).

### 2. PROCEDURAL BACKGROUND.

In July 2003, petitioner was charged with one count of attempted murder, two counts of robbery, one count of assault with a firearm, and two counts of kidnapping for robbery. Petitioner was represented by Attorney Edward Bell. According to petitioner, just before his sixteenth birthday the trial court stated that he would be tried as an adult. Petitioner pleaded *nolo contendere* to robbery and attempted murder with use of a firearm and infliction of great bodily injury in December 2003 when he was sixteen years old. At the hearing, but before petitioner entered his plea, Judge Julie Conger said:

> I saw your reaction when I discussed the fact that these were two strikes, but that's the facts of life. This is the best that is going to happen. The offer is only open this morning, and I can tell you from having sat on the bench for 21 years that I concur with your attorney that it is in your best interests to enter this plea.

Judge Conger also addressed petitioner's waiver of his rights and indicated that she was "satisfied that [his] waiver [was] knowing and voluntary." Petitioner's "Waiver on Plea of Guilty/No Contest," did not mention his competency at the time of the plea. In exchange for the plea, the prosecution dropped the remaining charges. Petitioner was sentenced to twenty years in prison with possibility of parole at seventeen years. He received 470 days credit for time already served. Petitioner did not appeal (Dkt. Nos. 1 at 2, 11, 27–28; 105 at 1; 110-1, Exhs. 3–4, 18).

Three years later, Dr. Myla Young performed a neuropsychological test on petitioner and found that his intellectual functioning was in the "Extremely Low," first percentile, "Formally Mentally Retarded" range. Subsequently, petitioner, proceeding without counsel, filed a petition for writ of habeas corpus in Alameda County Superior Court. Petitioner submitted two claims: (1) he was incompetent to plead *nolo contendere*; and (2) his counsel was ineffective for failing to adequately investigate his competency, to hold a competency hearing, and to properly explain the consequences of the plea. The petition was denied as untimely without cause for delay, citing *In re Clark*, 5 Cal. 4th 750 (1993), and, alternatively, as failing to state a *prima facie* case for relief. A few months later, petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, which was denied. The state appellate court found the petition was untimely and that Dr. Young's report was preliminary and thus insufficient to find mental incompetence at the time of the plea. Petitioner then filed a petition for writ of habeas corpus in the California Supreme Court. The petition was denied without comment but with citations to *In re Robbins*, 18 Cal. 4th 770, 780 (1998), *Ex parte Swain*, 34 Cal. 2d 300, 304 (1949), and *People v. Duvall*, 9 Cal. 4th 464, 474 (1995) (Dkt. No. 5-1, Exhs. 1–3; 4 at 1, Appellate Ct. Op. at 2, 4; 5).

In December 2009, petitioner filed a *pro se* petition for writ of habeas corpus in federal court. Petitioner argued: (1) he lacked competence to plead *nolo contendere* and did not do so knowingly and voluntarily; (2) he received ineffective assistance of counsel for his attorney's failure to investigate his incompetence to plead *nolo contendere*, to request a competency hearing, or to fully explain the consequences of the plea deal; and (3) he received ineffective

3

assistance of counsel for his attorney's failure to challenge the state court's jurisdiction to try him as an adult. Respondent filed a motion to dismiss the petition as untimely pursuant to 28 U.S.C. § 2244(d)(1)(A). In response, petitioner submitted a mental health report suggesting that he was mentally impaired. After an assignment to Judge Thelton Henderson, an order found the report too ambiguous to justify equitable tolling and granted respondent's motion to dismiss the petition as untimely for failure to satisfy the one-year statute of limitations under the Anti-Terrorism and Effective Death Penalty Act of 1996 (Dkt. Nos. 1 at 5–12; 5 at 1; 10 at 1–2, 5–9).

Subsequently, our court of appeals granted a certificate of appealability to determine whether the petition was properly dismissed, including whether Judge Henderson should have held an evidentiary hearing to determine whether petitioner's alleged mental incompetence prevented him from filing his petition within the limitations period. Our court of appeals then reversed Judge Henderson's decision, and remanded for further factual development, to expand the record, engage in discovery, or to hold an evidentiary hearing on the topic of whether petitioner was entitled to equitable tolling on account of his alleged mental impairment. *See Simon v. Uribe*, 528 Fed. Appx. 764 (9th Cir. 2013). Upon remand, Judge Henderson appointed counsel for petitioner. During a subsequent evidentiary hearing, experts presented testimony on the issue of petitioner's mental incompetence. In August 2017, an order found that petitioner "[was] entitled to equitable tolling due to severe mental impairment" and denied respondent's motion to dismiss (Dkt. Nos. 16 at 1; 21 at 2; 94-1; 95-1; 105 at 1).

Respondent then answered. Respondent now asserts that claims one and two are procedurally defaulted or, alternatively, that they fail on the merits. Respondent argues that the third claim is unexhausted or, alternatively, fails on the merits. Petitioner filed a traverse with a request to expand the record and for further discovery related to his intellectual disability. Respondent filed a reply to petitioner's traverse. After reassignment, this Court held a status conference to discuss the legal issues that remain to be decided (Dkt. Nos. 109-1 at 7, 9, 30–31; 117, Br. P. & A. at 4–5; 123).

4

In the August 2017 order, Judge Henderson found that petitioner met both elements under *Bills v. Clark*, 628 F.3d 1092, 1099–1100 (9th Cir. 2010), to be eligible for equitable tolling due to mental impairment. The *Bills* elements are: *First*, the mental impairment was an "extraordinary circumstance" that rendered the petitioner unable to understand the need to timely file or unable to prepare the petition; and *second*, the petitioner was diligent in pursuing the claims to the extent he could understand them. The order stated that "[i]t is sufficiently clear from the record at hand that [petitioner] meets the three criteria for a diagnosis of mild intellectual disability outlined in the DSM-5" (Dkt. No. 105 at 4, 24, 29, 32, 35, 37).

The relevant factual findings are explained in the August 2017 order. In brief, while in first grade, petitioner was "far below the level of most students," even though he was older, and was not making adequate progress in reading. While in juvenile detention, petitioner was prescribed Paxil and Trazadone. Records suggested he was diagnosed with depression. While in prison, he spoke slowly, used simple English, had difficulty with comprehension, and was written up for failing to make it to his job in the kitchen (Dkt. No. 105 at 6, 10–13).

Two doctors presented expert reports and testimony "regarding whether petitioner was incompetent to file a timely petition for a writ of habeas corpus due to functional impairment(s) of a mental disorder, disease or defect." Dr. Howard Friedman, the expert retained by petitioner's counsel, diagnosed petitioner with "mild intellectual disability" (*id.* at 6, 10–14, 18, 23).

With respect to the first element under *Bills*, 628 F.3d at 1099–1100, the order found that petitioner's mental impairment was so severe that he did not have the cognitive capacity to understand the need to timely file the habeas petition and that he had been unable to personally prepare the petition. The order relied on Dr. Friedman's conclusion that petitioner had had a "lifelong developmental condition" and that he had been unable to read and write well enough to prepare the petitions. The order found that "[p]etitioner's mental impairment was present throughout the tolling period of May 1, 2004 to November 29, 2009" (Dkt. No. 105 at 31–32).

The order also found that petitioner met the second element under *Bills*, namely that petitioner had been diligent in pursuing his claims to the extent that he could understand them,

5

given his intellectual disability and the extent of assistance reasonably available to him. Because petitioner was illiterate — or close to it — and needed assistance with conceptually simple tasks, the order found that he could not have filed the petition on his own. The order also relied on the fact that resources were not available to him during the times he was required to file (*id.* at 33–36).

Finally, the order noted that "[i]t is undisputed that his intellectual disability is not profound. But nor is the presence of a profound intellectual disability a criterion for eligibility for equitable tolling" (*id.* at 30).

## ANALYSIS

This order addresses the extent to which petitioner's claims are barred from federal review due to procedural default. This order holds that the factual findings regarding petitioner's mental condition in the August 2017 order also establish cause and prejudice to excuse such procedural default.

### 1. PETITIONER'S GROUNDS FOR RELIEF.

As grounds for habeas relief, petitioner asserts: (1) he was incompetent to plead *nolo contendere* and that his plea was not knowingly and voluntarily made; (2) his attorney was ineffective for failing to investigate his incompetence to plead *nolo contendere*, to request a competency hearing, or to fully explain the consequences of the plea deal; and (3) his attorney was ineffective for failing to challenge the court's jurisdiction to try him as an adult.

### 2. STANDARD OF REVIEW.

According to respondent, the standard of review will be *de novo* when the state court did not reach the merits of the procedurally defaulted claim (Dkt. No. 123, Br. at 9–10). If the state courts never reached the merits of the claim, the federal court reviews the claim *de novo*. *Pirtle v. Morgan*, 313 F.3d 1160, 1167–68 (9th Cir. 2002). The deferential AEDPA standard of review does not apply in this context. *See ibid.* As addressed below, because the California Supreme Court did not make a decision on the merits, the standard of review will be *de novo*.

6

### 3. CAUSE AND PREJUDICE TO EXCUSE PROCEDURAL DEFAULT OF CLAIMS ONE AND TWO.

"[A]bsent showings of cause and prejudice, federal habeas relief will be unavailable when (1) a state court [has] declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement and (2) the state judgment rests on independent and adequate state procedural grounds." *Walker v. Martin*, 562 U.S. 307, 316 (2011) (internal quotation marks and citations omitted). Instead of setting determinate time limits on collateral relief applications, California sets a "reasonableness" standard. *Id.* at 311. California's timeliness rule is independent, *Bennett v. Mueller*, 322 F.3d 573, 582–83 (9th Cir. 2003), and adequate, *Martin*, 562 U.S. at 316–17. When a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of these claims is barred. A procedural bar is excused when the petitioner can demonstrate cause for the default and actual prejudice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). For the reasons set forth below, although the California Supreme Court rested its decision on adequate and independent state grounds, the evidence herein establishes cause and prejudice for the procedural default on account of petitioner's mental disability.

Petitioner's claims were rejected by the California Supreme Court without comment but with citations to *Robbins*, 18 Cal. 4th at 780, *Swain*, 34 Cal. 2d at 304, and *Duvall*, 9 Cal. 4th at 474 (Dkt. No. 5-1, Exh. 5). A denial without explanation other than a citation to *Robbins* is considered a denial due to untimeliness. *Thorson v. Palmer*, 479 F.3d 643, 645 (9th Cir. 2007). Citations to *Duvall* and *Swain* mean that the petition was dismissed "without prejudice, with leave to amend to plead facts with particularity." *Cross v. Sisto*, 676 F.3d 1172, 1177 (9th Cir. 2012). Citations to *Swain* and *Duvall* signal "the habeas petition [was] procedurally deficient," not decided on the merits. *Cross*, 676 F.3d at 1177–78. Therefore, absent a showing of cause and prejudice, petitioner's claims would be barred from federal review due to procedural default.

Petitioner argues that because the California Supreme Court also cited *Duvall* and *Swain*, the state court bypassed the timeliness issue and proceeded to review the habeas petition on the merits (Dkt. No. 117, Br. at 5–7). "California courts have discretion, however, to bypass

7

a timeliness issue and, instead, summarily reject the petition for want of merit." *Walker*, 562 U.S. at 313. "[W]hen state courts overlook a procedural default and decide the merits of a federal claim, federal review is not precluded." *Towery v. Schriro*, 641 F.3d 300, 312 (9th Cir. 2010) (citation omitted). Petitioner's argument fails for the following two reasons.

*First*, the California Supreme Court cited to *Duvall*, 9 Cal. 4th at 474, a page that addresses that conclusory allegations do not warrant relief. As addressed in *Swain*, 34 Cal. 2d at 303–04, "our determination that the vague, [conclusory] allegations of the present petition are insufficient to warrant issuance of the writ is not a ruling on the merits of the issues." Petitioner concedes that citations to *Duvall* and *Swain* do not constitute a ruling on the merits and argues that the California Supreme Court *attempted* to address the issues on the merits (Dkt. No. 117, Br. at 7). Because citations to *Duvall* and *Swain* signal procedural deficiency and grant leave to amend, such an attempt to bypass the timeliness issue does not mean that the California Supreme Court reviewed the claims on the merits.

*Second*, "[a] state court's application of a procedural rule is not undermined where . . . the state court simultaneously rejects the merits of the claim." *Bennett*, 322 F.3d at 580. The California Supreme Court cited to *Robbins* at the page that addresses the timeliness issue, which signals a denial based on untimeliness. Because the untimeliness issue is an adequate and independent state ground, federal review would thus be precluded regardless of the meaning of the citations to *Duvall* and *Swain*. *Bennett*, 322 F.3d at 582–83; *Martin*, 562 U.S. at 316–17; *Coleman*, 501 U.S. at 750. Therefore, although the citations to *Robbins*, *Swain*, and *Duvall* would normally render the claims procedurally barred, such procedural default is excused on account of cause and prejudice.

Procedural default may be excused if a habeas petitioner shows "cause for the bypass of state procedures and actual prejudice arising from the default." *Hughes v. Idaho State Bd. of Corrs.*, 800 F.2d 905, 906–07 (9th Cir. 1986) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97, (1977)). Petitioner argues that his intellectual disability and lack of counsel during collateral proceedings constitute cause and prejudice to excuse such procedural default (Dkt. No. 117,

8

Br. at 8, 13). To establish cause, petitioner must show that "some objective factor external to the defense impeded . . . efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753. To establish prejudice, petitioner must show that the error "worked to [petitioner's] actual and substantial disadvantage." *Murray v. Carrier*, 477 U.S. 478, 494 (1986). This order finds that the evidence addressed in the March 2017 evidentiary hearing sufficiently establishes cause and prejudice to excuse procedural defaults raised by respondent.

The August 2017 order stated:

> Based on the extensive record in this case, the Court finds that Simon was diligent in pursuing his claims to the extent that he could understand them, given his intellectual disability and the extent of assistance reasonably available to him. When jailhouse lawyers were available to review Simon's records and write petitions on his behalf, he was able to add his signature to those petitions. When assistance was not available and explicitly offered to Simon, the record shows that Simon would not have been able to consistently search for it and obtain it.

(Dkt. No. 105 at 35) (footnote omitted). The order noted that petitioner suffered from this mental impairment at least from May 1, 2004, to November 29, 2009 (*id.* at 31–32). Dr. Friedman found that petitioner suffered from a "lifelong developmental condition" (*ibid.*). The August 2017 order relied on Dr. Friedman's finding to hold that such a condition rendered him unable to understand the need to timely file his petition or seek the help he would need (*id.* at 31–32, 35). This order finds that petitioner's inability to understand the need to timely file his petition is an objective external factor that "impeded [petitioner's] efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753. Because this inability rendered him incapable of seeking relief, his mental condition worked to his "actual and substantial disadvantage." *Murray*, 477 U.S. at 494. Furthermore, our court of appeals noted that the cause and prejudice standard is "one of discretion intended to be flexible and yielding to exceptional circumstances." *Hughes*, 800 F.2d at 909. In light of the evidence brought forth in the March 2017 evidentiary hearing, petitioner's mental condition is an exceptional circumstance.

Respondent cites several decisions from our court of appeals to argue that mental condition cannot establish cause to excuse procedural default (Dkt. No. 123, Br. at 8–9). Respondent cites *Hughes*, 800 F.2d at 909, where our court of appeals held that illiteracy

9

does not establish cause to excuse procedural default. Here, by contrast, although petitioner was illiterate — or close to it — he also suffered from a mental condition in which he did not understand the need to file a petition or ask for help (Dkt. No. 105 at 34–35).

Respondent also cites *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988), where our court of appeals held that a mental condition cannot establish cause. The petitioner in *Tacho* argued his mental condition excused the procedural default, because he had been diagnosed as "borderline mental defective." *Ibid.* Our court of appeals disagreed, because the petitioner in *Hughes*, who was illiterate and had no counsel, was not entitled to cause to excuse procedural default. *Ibid.* Accordingly, our court of appeals in *Tacho* held that a literate petitioner with post-conviction counsel could not establish cause either. *Ibid.* Here, by contrast, petitioner did not have post-conviction counsel until the remand to hold an evidentiary hearing before Judge Henderson (Dkt. No. 21). Therefore, because of petitioner's mental condition, near illiteracy, and lack of post-conviction counsel, *Hughes* and *Tacho* are factually distinguishable.

The legal principle that our court of appeals distilled "from *Hughes* and *Tacho* is that a pro se petitioner's mental condition cannot serve as cause for a procedural default, *at least when the petitioner on his own or with assistance* remains 'able to apply for post-conviction relief to a state court.' " *Schneider v. McDaniel*, 674 F.3d 1144, 1154 (9th Cir. 2012) (citing *Hughes*, 800 F.3d at 909; *Tacho*, 862 F.2d at 1381) (emphasis added).

> *Hughes* and *Tacho* do not necessarily foreclose the possibility that a pro se petitioner might demonstrate cause in a situation where a mental condition rendered the petitioner completely unable to comply with a state's procedures and he had no assistance. But they do prevent us from excusing a procedural default where a mental defect had less of an adverse effect on the petitioner's ability to comply with state procedures than illiteracy would have had.

*Ibid.* On the same note, respondent cites *Barnett v. Knowles*, 2013 WL 3815642, at *2 (N.D. Cal. 2013), to argue that petitioner's mental condition does not constitute cause to excuse procedural default unless the mental condition renders him *completely* unable to comply with state procedures (Dkt. No. 123 at 3–4). This order holds that the factual findings in the August 2017 order sufficiently established that petitioner suffered from a mental incompetence that rendered him completely unable to file his petition on his own or seek the help he needed.

10

Therefore, the procedural default leading to the California Supreme Court's decision is excused under the cause and prejudice standard.

### 4. EXHAUSTION OF ALL CLAIMS.

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings are first required to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. *See* 28 U.S.C. § 2254(b), (c); *Rose v. Lundy*, 455 U.S. 509, 515–16 (1982). The exhaustion requirement is not jurisdictional, but rather a matter of comity. *See Granberry v. Greer*, 481 U.S. 129, 133–34 (1987).

Respondent argues that after the August 2017 order finding petitioner eligible for equitable tolling, the record has been expanded enough to render his claims substantially different from his claims raised on state collateral review (Dkt. No. 123 at 9). According to respondent, the claims are now — and especially would be if this Court grants expansion of the record — unexhausted in state court (*ibid.*). At the status conference, both parties asked to further brief this issue. This request is **GRANTED**. The new round of briefing on the exhaustion issue shall be submitted by **NOON ON AUGUST 15, 2019**.

Respondent also argues that petitioner's third claim — ineffective assistance of counsel for failing to challenge the trial court's jurisdiction to try him as an adult — is unexhausted under 29 U.S.C. § 2254(b)(1), because it was not presented in state court (Dkt. Nos. 1 at 11–12; 109-1 at 30–31). The new briefing shall address this issue as well.

**IT IS SO ORDERED.**

Dated: July 25, 2019

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE